**FILED**

FEB 0 5 2019

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 08-057-7 (TNM) |
| ) | |
| v.   ) | |
| ) | |
| MARIO RAMIREZ TREVINO, ) | |
|     also known as "Mario Pelon" ) | |
|     and "X-20" ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

Were this case to proceed to trial, the United States of America would prove the following facts at trial beyond a reasonable doubt:

1.  This proffer of evidence is not intended to constitute a complete statement of all facts known by Defendant **MARIO RAMIREZ TREVINO** (hereinafter, "Defendant"), but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea and his sentencing. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for Defendant's plea of guilty to the charged offense, which carries a mandatory statutory minimum sentence. The Government submits that had there been a trial in this matter, the Government would have proven each of the facts as outlined beyond a reasonable doubt, and further that the facts satisfy each of the essential elements of the charges, as well as the amount and type of drugs involved, to which the Defendant is entering his plea.

2.  Beginning in or about February 2000, and continuing until the date of his arrest, August 17, 2013, in Mexico and elsewhere, the Defendant was a member of a conspiracy, the object of which was to manufacture and distribute five kilograms or more of cocaine and one thousand (1,000) kilograms or more of marijuana, intending and knowing that such substances

would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959, 960, 963 and Title 18, United States Code, Section 2.

3. During the time period alleged in the Fourth Superseding Indictment, the Defendant admits that he was an active member of the "Cartel Del Golfo" (hereinafter "Gulf Cartel") who together with "Los Zetas" operated under the name "The Company" (hereinafter "The Company"). The Gulf Cartel is a violent Mexican criminal organization engaged in the manufacture, distribution and importation of large quantities of cocaine and marijuana into the United States, among other illegal activities. The Gulf Cartel recruited and employed an elite group of former Mexican military officers as security and enforcers, who became known as Los Zetas.

4. The Company controlled hundreds of miles of Mexican territory along the border of Mexico and the United States. The Company divided its territory into areas known as "plazas" and assigned a leader, known as a "plaza boss." The Company transported large cocaine shipments via boats, planes, and motor vehicles from Colombia and Venezuela to Central America, and then to various plazas in Mexico. The Company also transported large quantities of marijuana grown in Mexico to plazas using motor vehicles. The Company then transported the shipments of cocaine and marijuana from Mexico to the United States for distribution.

5. In total, The Company acquired, transported, distributed and ultimately imported into the United States more than 450 kilograms of cocaine and more than 90,000 kilograms of marijuana during the time period charged in the Fourth Superseding Indictment.

6. Specifically, Defendant affirms the accuracy of the following facts:

a. Prior to the year 1998, Defendant served as a Tamaulipas State Police officer in Tamaulipas, Mexico. As a police officer, Defendant became acquainted with numerous other state and local police officers who later became members of The Company including Jorge Eduardo Costilla Sanchez, also known as "El Cos," and Gregorio Sauceda Gamboa, also known as "Goyo."

b. In approximately 2000, Sauceda Gamboa recruited Defendant, who was no longer employed with the Tamaulipas State Police, to work as a security guard for The Company in Reynosa, Mexico. At the time, Sauceda Gamboa was the plaza boss in Reynosa responsible for coordinating the transportation and distribution of cocaine and marijuana for ultimate distribution into the United States.

c. In addition to providing security for Sauceda Gamboa in Reynosa, Defendant routinely received, transported and distributed cocaine and marijuana on behalf of The Company. Over time, Defendant became increasingly involved in the drug trafficking side of The Company and had direct responsibility for numerous drug shipments of cocaine and marijuana sent to the United States. Specifically, Defendant's strategic location in Reynosa, which shares an international border with McAllen, Texas, allowed Defendant to distribute cocaine and marijuana to another criminal group on the border called "Los Piojos." Los Piojos was responsible for crossing the drugs into the United States and the repatriation of bulk United States currency to Mexico. Defendant frequently received bulk United States currency, from Los Piojos in amounts up to two million dollars at a time.

d. In approximately 2006, Defendant began working directly under Costilla Sanchez who was the leader of The Company. Defendant continued to receive, transport and distribute large quantities of cocaine and marijuana for ultimate distribution in United States. Under

Costilla Sanchez, Defendant rose to become a high ranking leader in The Company who coordinated drugs shipments, oversaw drug couriers, security personnel, scouts and others to facilitate The Company's drug trafficking operations, which involved managing, directing and supervising more than five members of the conspiracy. In early 2013, the Defendant ascended to become the leader of the Gulf Cartel until his arrest in August 2013.

    e. Defendant admits that during the course of his involvement in the conspiracy, law enforcement in Mexico and Panama seized ton quantities of cocaine that were intended for the Defendant and other members of The Company to distribute in Mexico and the United States.

    f. In the performance of his duties for The Company, Defendant possessed and used dangerous weapons, including firearms in furtherance of The Company's drug trafficking activities.

    g. Defendant, along with other members of The Company, organized, directed, and carried out numerous acts of violence against rival drug trafficking groups, Mexican law enforcement and others who The Company perceived as threats to their drug trafficking activities. Defendant is personally responsible for ordering or carrying out several murders.

    h. Defendant admits that the total amount of controlled substances involved in this conspiracy that is directly accountable to him was more than 450 kilograms of cocaine and more than 90,000 kilograms of marijuana.

    i. Defendant admits that he knew the cocaine and marijuana would be illegally imported into the United States for further distribution.

    7. This proffer does not purport to include all of Defendant's illegal conduct during the course of his charged offense. It represents sufficient information for the Court to find a factual basis for accepting Defendant's guilty plea in the above-captioned matter and is not

intended to represent all of Defendant's relevant conduct for sentencing purposes. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the Defendant's plea of guilty to the charged offense. Had there been a trial in this matter, the Government would have proven each of these facts beyond and to the exclusion of every reasonable doubt. The parties agree that the above-outlined facts satisfy each of the essential elements of the charge to which the Defendant is entering his plea. The Defendant acknowledges that there are additional details about his involvement in the drug trafficking conspiracy that are not included in this statement.

8. The Defendant agrees venue and jurisdiction pursuant to 18 U.S.C. § 3238 lie with this Court.

9. The Defendant also agrees that his participation as a conspirator in the above-described acts was in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

//

//

//

//

10. The Defendant is pleading guilty because the Defendant is in fact guilty.

ARTHUR G. WYATT, CHIEF
United States Department of Justice
Narcotic and Dangerous Drug Section

Date: 2/4/19          By: _____
                           Cole Radovich
                           Trial Attorney

Approved by:

Date: 2/4/19          By: _____
                           Michael Lang
                           Acting Deputy Chief

## DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this factual proffer with the assistance of an English-Spanish interpreter, and have discussed it at length with my attorney, Robert Feitel, Esq., who speaks fluent Spanish. This factual proffer has been translated into Spanish for me. I understand that the English version controls. I fully understand this factual proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with this factual proffer and Plea Agreement and matters related to it.

_____          _____
Mario Ramirez Trevino                                   Date
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have carefully reviewed every part of this factual proffer with the Defendant in Spanish.

_____          _____
Robert Feitel                                                  Date
Attorney for Defendant